Ricky Saverance owned and operated his own carpet installation business 
and did work as a subcontractor for Williams Carpet S

THIS OPINION HAS NO PRECEDENTIAL 
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT 
 AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Ricky Saverance, Claimant, Respondent,
v.
Williams Carpet Service, Employer, and The Hartford, Carrier,
Appellants.
 
 
 

Appeal From Richland County
 L. Casey Manning, Circuit Court Judge

Unpublished Opinion No. 2004-UP-551
Submitted September 15, 2004  Filed October 28, 2004

AFFIRMED

 
 
 
George D. Gallagher, of Columbia, for Appellants.
J. Marvin Mullis, of Columbia, for Respondent.
 
 
 

PER CURIAM:  Williams Carpet Service and The 
 Hartford (collectively Williams Carpet Service) appeal the circuit courts 
 affirmance of the Appellate Panel of the Workers Compensation Commissions 
 order setting the compensation rate for claimant Ricky Saverance and ask this 
 court to set-off any award by the amount in excess of the correct compensation 
 rate they have already paid.  We affirm. [1] 
FACTS
Ricky Saverance owned and operated his own carpet installation 
 business, working as a subcontractor for Williams Carpet Service from 1996 
 until 1998.  In 1998, Saverance was injured as he attempted to stretch carpet.  
 He missed the knee kicker and knocked out a doorjamb with the top of his knee.  
 Saverance has been out of work and had two knee surgeries since the accident.  
 The knee injury has also resulted in an altered gait and, subsequently, a back 
 injury.  
Though a subcontractor, Saverance is covered by Williams Carpet Services 
 workers compensation insurance.  On October 27, 1998, Saverances workers 
 compensation claim was accepted and temporary total benefits at the maximum 
 weekly compensation rate for 1998, $465.18, were initiated.  This compensation 
 rate was based on the assumption that Saverance was an employee, and, therefore, 
 entitled to an average weekly wage and corresponding compensation rate based 
 on his gross income.  
After Saverance reached maximum medical improvement, Williams Carpet Service 
 filed a form 21 request to terminate weekly benefits and enter a permanent disability 
 award.  Williams Carpet Service also requested reduction of Saverances compensation 
 rate on the basis that he was not actually an employee, but a subcontractor, 
 and, therefore, the compensation rate should have been based on his net as opposed 
 to gross income.  Finally, Williams Carpet Service requested a set-off based 
 on any difference between the actual past payments and any reduced compensation 
 rate.  
A hearing was held before the workers compensation commissioner on April 26, 
 2001, to determine the extent of Saverances permanent disability and to calculate 
 the average weekly wage and applicable compensation rate.  The commissioner 
 set the average weekly wage and compensation rate as $388.40 and $258.94 respectively.  
 However, the commissioner declined to grant a set-off based on the difference 
 between the actual compensation rate and what was paid beginning in October 
 1998.  Instead, the commissioner did allow a set-off from the time Williams 
 Carpet Service filed the form 21.  Furthermore, the commissioner found Saverance 
 had a 35% loss of use of his right leg and 10% loss of use of his back.  
The commissioners findings were appealed by both parties to the workers compensation 
 commission appellate panel.  There, the commission affirmed and reversed in 
 part.  The commission determined that due to the injury and his total loss of 
 earning capacity, Saverance is permanently and totally disabled.  The commission 
 also reinstated the maximum compensation rate for 1998 of $465.18, noting payments 
 were made at that rate for over two years and [e]ven though the correct AWW 
 [average weekly wage] and CR [compensation rate] remain open until such time 
 as there is an order of the commission, this panel finds that the rate at which 
 benefits were paid is an equitable rate.  
Williams Carpet Service appealed to the circuit court the issues of permanent 
 and total disability as well as the commissions determination regarding the 
 average weekly wage.  The circuit court affirmed the commissions findings.  
 Williams Carpet Service appeals part of this decision.

STANDARD OF REVIEW
The Administrative Procedures Act establishes the standard 
 of review for decisions by the South Carolina Workers Compensation Commission.  
 Lark v. Bi-Lo, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981).  This court 
 can reverse or modify the Appellate Panels decision only if the appellants 
 substantial rights have been prejudiced because the decision is affected by 
 an error of law or is clearly erroneous in view of the reliable, probative, 
 and substantial evidence on the whole record.  Shealy v. Aiken County, 
 341 S.C. 448, 454, 535 S.E.2d 438, 442 (2000); S.C. Code Ann. § 1-23-380(A)(6) 
 (Supp. 2003).  Substantial evidence is not a mere scintilla of evidence nor 
 evidence viewed from one side, but such evidence, when the whole record is considered, 
 as would allow reasonable minds to reach the conclusion the [Appellate Panel] 
 reached.  Shealy, 341 S.C. at 455, 535 S.E.2d at 442.  The possibility 
 of drawing two inconsistent conclusions does not prevent the Appellate Panels 
 conclusions from being supported by substantial evidence.  Tiller v. Natl 
 Health Care Ctr., 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999).
The Appellate Panel is the ultimate fact finder in 
 workers compensation cases and is not bound by the single commissioners findings 
 of fact.  Ross v. American Red Cross, 298 S.C. 490, 492, 381 S.E.2d 728, 
 730 (1989).  The final determination of witness credibility and the weight 
 to be accorded evidence is reserved to the [Appellate Panel].  It is not the 
 task of this Court to weigh the evidence as found by the [Appellate Panel].  
 Shealy, 341 S.C. at 455, 535 S.E.2d at 442 (citations omitted).

LAW/ANALYSIS
Williams Carpet Service appeals the circuit courts order on the basis that 
 the compensation rate is in error and it would be unjust to allow Saverance 
 to retain any difference created by a lowering of the compensation rate.  We 
 disagree and affirm the compensation rate as set by the workers compensation 
 commission.  

1.  The commissions compensation rate was not error.

Williams Carpet Service argues the commissions compensation 
 rate is clearly erroneous in view of the reliable, probative, and substantial 
 evidence of the whole record.  In contrast, we find a record with contradictory 
 evidence regarding Saverances average weekly wage; however, when viewed in 
 its totality, this evidence suggests an average weekly wage that supports the 
 maximum compensation rate.  Because there is substantial evidence supporting 
 the full commissions decision, we affirm.
The goal of workers compensation is to set an approximate 
 earnings capacity had claimant not been injured.  Sellers v. Pinedale Residential 
 Ctr., 350 S.C. 183, 191, 564 S.E.2d 694, 698 (Ct. App. 2002).  A subcontractors 
 compensation rate should be based on net rather than gross earnings.  Stephen 
 v. Avins Constr. Co., 324 S.C. 334, 347, 478 S.E.2d 74, 81 (Ct. App. 1996).  

The difficulty caused by this case is that Williams Carpet 
 Services has challenged the compensation rate, and it is difficult to clearly 
 show what Saverance as a subcontractor earned.  The average compensation rate 
 approved by the full commission was $465.18.  The rule for calculating the compensation 
 rate on form 20 requires multiplying the average weekly wage by the factor of 
 .6667 to reach the compensation rate.  Therefore, the average weekly wage would 
 have been a minimum of $697.74 for the average compensation rate to be $465.18.  

Saverances average weekly wage can be calculated in several 
 ways according to his tax returns.  The net income on Saverances tax return 
 was $3,650.  The average weekly rate after expenses would be $86.90, $3,650 
 divided by 42 weeks.  However, counsel for Williams Carpet admitted this argument 
 for a minimum compensation rate was made tongue [in] cheek.  The gross income 
 on the income tax return was $39,371, which would be $937.40 per week when divided 
 by 42 weeks.  However, the $937.40 gross pay does not take into account expenses 
 Saverance incurred.  It is not simply a case of looking at the total amount 
 paid to Saverance by Williams Carpet Service, because out of this money Saverance 
 had to pay helpers and purchase supplies.  
On top of contradictory results based on his tax returns, 
 Saverance testified 10% of his gross payments had been taken by Williams Carpet 
 Service to pay workers compensation insurance premiums and he had paid approximately 
 $4,400 during the 42 weeks prior to his injury.  This would suggest that Saverance 
 earned $1,047.60 gross pay per week. [2]   Additionally, a vocational rehabilitation 
 expert for Williams Carpet Service presented evidence that the average hourly 
 wage for a carpet installer in South Carolina was $9.71.  This hourly wage would 
 support an average weekly wage of $388 and was entered into evidence pursuant 
 to section 42-1-40 of the South Carolina Code (Supp. 2003).  The hourly wage 
 of a carpet installer would not, however, be that of a subcontractor with installers 
 working for him.
Mr. Williams of Williams Carpet Service also testified that 
 Saverance was among his top subcontractors, he could make more than ten dollars 
 an hour, and could gross more than four hundred dollars a week.  Later, before 
 the circuit court, defense counsel conceded that Saverance was grossing a substantial 
 amount of money per week, you know, 900, $800, a thousand dollars, $700 a week, 
 which would, you know, entitle him to the maximum compensation rate.  
The record is 
 replete with conflicting and contradictory evidence regarding the average weekly 
 wage.  However, there is evidence that Saverances gross weekly wage exceeded 
 $1,000.  Additionally, the record is devoid of any serious valuation of Saverances 
 work-related expenses.  By awarding Saverance the maximum weekly wage, the commission 
 must have determined his expenses did not exceed $300.  Decisions of fact are 
 beyond the purview of the appellate court as long as there is substantial evidence 
 supporting the commissions decision.  We find the compensation rate was properly 
 and appropriately set.  As there is no difference in payments made, Williams 
 Carpet Service second argument is rendered moot.
Additionally, 
 Williams Carpet Service argues the circuit court erred in finding the average 
 weekly wage to be $465.18.  However, it is clear from a review of the record 
 and the entirety of the order that this was a scrivener error and in fact the 
 court supported the commissions determination that the compensation rate 
 was $465.18.  See State v. George, 331 S.C. 342, 347, 503 S.E.2d 
 168, 171 (1998) (We note that the circuit courts order incorrectly refers 
 to Dr. Albiniaks testimony concerning African Americans making up more than 
 13% of the voting and driving population. This statement--that the percentage 
 was based on voting and driving population--is directly contradicted 
 by the record, so we assume this was a scriveners error.).

2.  Unjust Enrichment

Williams Carpet Service argues if the compensation rate 
 was in error, the doctrine of unjust enrichment requires Williams Carpet Service 
 be given credit for payments made pursuant to the higher, erroneous compensation 
 rate.  Because of our decision that the higher compensation rate was supported 
 by substantial evidence, it is not necessary to reach this argument.  See 
 Futch v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 
 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining 
 issues when its determination of a prior issue is dispositive of the appeal).
CONCLUSION
For the reasons stated herein, the decision of the circuit 
 court is
AFFIRMED. 
HEARN, C.J., and HUFF and KITTREDGE, JJ., concur.

 
 [1] We 
 decide this case without oral argument pursuant to Rule 215, SCACR.

 
 [2] 
 $4,400 divided by 42 weeks equals $104.76.  $104.76 is ten percent of $1,047.60.